FILED
4:39 pm, 9/28/07
Stephan Harris
Clerk of Court

United States District Court
For The District of Wyoming

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ACCUSEARCH, INC., d/b/a Abika.com, and JAY PATEL,<br><br>Defendants. | ) | Case No. 06-CV-105-D |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter comes before the Court on the parties' cross-motions for summary judgment [Docket Nos. 45, 74, and 77]. The Court, having considered the motions and the responses thereto, having heard oral argument, and being otherwise fully advised in the premises hereby FINDS and ORDERS as follows:

**BACKGROUND**

The Federal Trade Commission ("FTC") initiated this action seeking injunctive and other equitable relief from Defendants Accusearch, Inc. d/b/a Abika.com and its president and owner, Jay Patel. The FTC alleges that the Defendants engaged in unfair business practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by

obtaining and selling confidential customer phone records without the affected customers' authorization.

Defendant Accusearch, Inc. is a Wyoming corporation that does business as Abika.com, a website that has offered for sale to its customers a variety of information products, including records of telephone call details, GPS traces (which disclose the exact location of a cell phone at any given time), Social Security Number verification, utility records, DMV records, and reverse email look-ups. While the relevant facts are lundisputed, the parties offer sharply divergent characterizations of those facts and the nature of the business conducted by Defendants.

Defendants characterize the nature of the Abika.com website as an "interactive person to person search engine that connects persons seeking information (searchers) to independent researchers who state that they can search that information for a fee." According to Defendants, Abika.com has allowed independent researchers to advertise phone records searches for which Abika.com "merely charges an administrative search fee for the use of its website and search engine." In contrast, the FTC has described Defendants' business as a "retail website" where Defendants have offered for sale a variety of information products including the telephone call detail records that are the subject of this dispute. The FTC alleges that Defendants purchased these records from "vendors" and resold them to Abika.com customers.

Beginning in February 2003 and continuing through January 2006, Accusearch

advertised the availability of telephone call detail records on its Abika.com website. The homepage described the phone records that could be purchased as follows: "Details of incoming or outgoing calls from any phone number, prepaid calling card or Internet Phone. Phone searches are guaranteed and available for every country of the world." Additional information about available searches appeared on the website's phone search page:

> Monthly Report of Call Activity for Cell Phone Numbers
> Lookup detailed outgoing calls from the most recent billing statement (or statement month requested). Most call activities include the date, time and duration of the calls. You may request target dates or target numbers that fall within each statement cycle along with the statement cycle dates. You can usually search statements that are 1-24 months old.
>
> ***
>
> Monthly Local or Toll Call Activity of Landline Phone Number
> Lookup outgoing local, long distance or local toll calls made from any landline phone number during a billing period. List includes the date, phone numbers called and may include the duration of calls. Available for USA and Canada.

Because federal law makes consumer phone records confidential and prohibits their unauthorized release, the only way a third party can obtain a consumer's phone records without the consumer's permission, or as otherwise authorized by law, is through theft or deception (for example, by impersonating the consumer or a phone company representative, hacking into the phone company's computer system, or bribing or cajoling an employee to steal or otherwise disclose the records). The Complaint

does not allege that the Defendants themselves contacted the telephone companies or directly obtained the telephone records at issue in this case. Instead, the phone records purchased through the Abika.com website were obtained from outside sources and provided to Defendants, who in turn sold them to its website users. Due in large part to Defendants' argument for immunity under the Communications Decency Act, discussed in more detail below, the parties offer differing labels for these outside sources: they are referred to as "vendors" by the FTC and "researchers" by Defendants.

Now pending before the Court are three Motions for Summary Judgment. Defendants first Motion asserts immunity under Section 230 of the Communications Decency Act ("CDA") and argues that under the circumstances presented by this case, injunctive relief is unavailable to the FTC as a matter of law. In their second Motion, Defendants assert four additional grounds for granting summary judgment. Defendants argue: 1) the FTC cannot establish that Defendants engaged in an unfair trade practice as a matter of law; 2) the FTC's claim for injunctive relief is unavailable; 3) the FTC is equitably estopped from seeking relief against the Defendants; and 4) the FTC lacks jurisdiction over this matter. The FTC moves for summary judgment arguing that it has demonstrated as a matter of law that Plaintiffs have engaged in an "unfair business practice" within the meaning of Section 5(a) of the FTC Act, and that there are no issues of material fact precluding summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, [the Rule 56(c)] standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248. A dispute over a material fact is "genuine" if a rational trier of fact could find in favor of the nonmoving party on the evidence presented. *Id.*

In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). If, after reviewing the evidence, there is but one reasonable conclusion as to the verdict and reasonable minds would not differ as to the import of the evidence, summary judgment is appropriate. *Anderson*, 477 U.S. at 250.

## DISCUSSION

*Immunity Under the Communications Decency Act of 1996*

In 1996, Congress enacted the Communications Decency Act of 1996 ("CDA"). At issue in this case is the application of Section 230, the CDA's immunity provision. Section 230(c)(1) of the CDA provides, in pertinent part, as follows:

> (c) Protection for "Good Samaritan" blocking and screening of offensive material.
>
> > (1) Treatment of publisher or speaker.
> > **No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.**

47 U.S.C. § 230(c)(1) (emphasis added).

By characterizing the Abika.com website as "an interactive person-to-person search engine," Defendants hope to portray themselves as a mere conduit of the phone records at issue and to avail themselves of the CDA's immunity provisions. While admittedly a novel and creative legal argument, in urging this application of the CDA, Defendants ask this Court to fit a square peg into a round hole. Because the Court finds that application of the CDA to the facts of this case would expand Section 230 immunity well beyond its intended scope, Defendants' claims of CDA immunity must fail.

In order to succeed on a claim for Section 230 immunity, a defendant must establish: 1) that it is a "provider or user of an interactive computer service;" 2) the

claims asserted "treat" the defendant as the publisher or speaker of information; and 3) the published information was provided by another information content provider (i.e., the defendant itself did not create or develop, in whole or in part, the information content at issue). 47 U.S.C. § 230(c)(1) and (f)(3); *Ben Ezra, Weinstein and Co. v. America Online Inc.*, 206 F.3d 980, 985 n.4, 986 (10th Cir. 2000); *DiMeo v. Tucker Max*, 433 F.Supp.2d 523, 529 (E.D. Pa. 2006).

1. Provider/User of "Interactive Computer Service"

Section 230(f)(2) defines the term "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer service, including a service or system that provides access to the Internet." 42 U.S.C. § 230(f)(2). Defendants argue that Abika.com is an "interactive search engine" fitting squarely within the CDA's definition of "interactive computer service." In contrast, the FTC urges that Abika.com is nothing more than a retail website offering a variety of information products through Defendants' Internet storefront.

For a variety of reasons, the Court is skeptical of Defendants' characterization of Abika.com as an "interactive person-to-person search engine that connects persons seeking information (searchers) to independent researchers who state that they can search that information for a fee." Not the least of this Court's concerns is the fact that this self-definition appears to have been conveniently adopted only in light of the

present litigation. Repeatedly throughout exhibits offered *by Defendants*, the Court finds more illuminating and plausible illustrations of Defendants' own understanding of the nature of the Abika.com website. *See, e.g.*, Def. Ex. 3A (email from Abika.com to "researcher"/vendor noting that Abika.com "places orders" with him); Def. Ex. 3B ("researcher"/vendor identifies himself as a "vendor" for Abika.com); Def. Ex. 7 ("checkout" function of website reinforces internet "store" model of Abika.com).

While the Court finds the FTC's characterization to be more accurate, application of the CDA, at least as to the first requirement of CDA immunity, does not hinge on which label is used. Courts have generally found that websites are "interactive computer services" within the meaning of the CDA. *See, e.g., Batzel v. Smith*, 333 F.3d 1018, 1030 n.16, P (9th Cir. 2003) (noting that several courts that have reached the issue "have decided that a website is an 'interactive computer service'). Nor does the retail nature of the Abika.com website necessarily take it outside the purview of the CDA. *See Almeida v. Amazon.com*, (S.D. Fla. July 30, 2004), *aff'd on other grounds*, 456 F.3d 1316 (11th Cir. 2006); *Schneider v. Amazon.com*, 108 Wash. App. 454, 31 P.2d 37, 40-41 (Wash. App. 2001). The Court finds that the language of the statute is broad enough to encompass the Abika.com website. Accordingly, the first Section 230 requirement is met.

2. <u>The Claims Asserted Do Not "Treat" Defendants as "Publishers"</u>

The FTC argues that to "treat" a person as a publisher within the meaning of the CDA is to hold that person civilly liable on a theory that "turns on that person being a 'publisher.'" The FTC notes that while there have certainly been cases that have extended immunity beyond defamation and similar tort-based causes of action, importantly, those cases have all involved "publication" of the relevant information in a manner which makes the relevant information content accessible by anyone using the "interactive computer service" at issue or in which the plaintiff seeks to hold the defendant liable for exercising (or failing to exercise) traditional editorial functions. In contrast, here, it is undisputed that the only parties that had access to the phone records at issue were the researcher/vendor who obtained them, Abika.com, and the particular customer/searcher that paid for the results. The FTC argues that such limited "publication" is not the type of publication contemplated by Section 230 of the CDA. The FTC argues they seek to hold Defendants liable not for “publishing” anything, but instead for committing acts in the course of trade or commerce, i.e., buying and selling.

Defendants argue that the FTC seeks to hold them liable for actions that are fundamentally in the nature of publication and distribution. At the heart of the FTC’s Complaint, Defendants urge, are allegations that Defendants’ “disclosed,” “made available,” or “sold” information and more specifically consumer telephone records.

Defendants note that "in the context of defamation, Black's Law Dictionary defines publish as "to make public to at least one other person by an means.'" Def. Brief at 9 [Docket No. 71] (quoting Black's Law Dictionary 999 (7th ed. 2000) (emphasis Defendants')). Notably, however, the FTC's Complaint does not sound in defamation. If it did, the Court would not be faced with the strained interpretation of the CDA now urged by Defendants.

Given the competing interpretations urged by the parties with respect to the CDA's requirement that the cause of action "treat [the Defendants] as a publisher," the Court finds that the meaning of this statutory requirement is ambiguous. *See In re Geneva Steel Co.*, 281 F.3d 1173, 1178 (10th Cir. 2002) ("An ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses."). When a statute's meaning is ambiguous, courts may seek guidance from legislative intent and statutory purpose to determine congressional intent." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 723 (10th Cir. 2006). To this end, the Court is guided by a clear legislative intent and an express statement of the policies behind the enactment of the CDA's immunity provision. *See* 47 § U.S.C. 230(b). As the Fourth Circuit noted in *Zeran*, the purpose of this statutory immunity is not difficult to discern:

> Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium. The imposition of tort liability on service providers for the communications of others

> represented, for Congress, simply another form of intrusive government regulation of speech.

*Zeran*, 129 F.3d at 330. Another purpose of Section 230 was “to encourage service providers to self-regulate the dissemination of offensive material over their services.” *Id.* at 331; *see also Ben Ezra*, 206 F.3d at 986 (noting that “Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions). “While Congress acted to keep government regulation of the Internet to a minimum, it also found it to be the policy of the United States ‘to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking and harassment by means of a computer.’” *Zeran*, 129 F.3d at 330.

Defendants’ argument might be more persuasive if the FTC sought to hold liable an internet service provider who, by virtue of the email-hosting services they provide, merely delivered an email containing ill-gotten consumer phone records. Clearly, that is not the type of conduct at issue here. Defendants advertised the availability of phone records, solicited orders, purchased the records from third-party sources for a fee, and then resold them to the end-consumers. It is ironic that a law intended to reflect a policy aimed at deterring “stalking and harassment by means of computer” is now being urged as a basis for immunizing the sale of phone records used for exactly those purposes. In light of the legislative intent and statutory purpose of the CDA’s immunity provision,

such an interpretation is simply untenable. Accordingly, the Court finds that the present lawsuit does not seek to “treat” Defendants as a publisher within the meaning of the CDA.

3. The Published Information Was Not Provided by Another Information Content Provider

Even if the FTC’s Complaint were interpreted as “treating” Defendants as a publisher within the meaning of the CDA, the Court believes that Defendants’ claim for CDA immunity nonetheless fails to meet the requirement that the published information must have been provided by “another information content provider.” Under this requirement, Defendants cannot have been *the* “information content provider,” for the information content at issue. 47 U.S.C. § 230(c)(1) and (f)(3). An "information content provider" is defined by the CDA to mean "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Where a defendant contributes to and shapes the content of the information at issue, there is no immunity under the CDA. *See Ben Ezra*, 206 F.3d at 985 n.4, 986 (noting that defendant who participates in the creation or development of information will not be immune from liability).

Once again, application of the CDA to the facts of this case do not fit neatly

within any existing case law. The phone records at issue in this case clearly were "created" (at least originally) by various telephone companies for lawful purposes. As a result of Defendants' business efforts, they were subsequently misappropriated and ultimately transmitted via Defendants' website to end-consumers. While Defendants made admittedly few changes to the records themselves, the Court finds that by soliciting requests for such phone records and purchasing them for resale, Defendants "participat[ed] in the creation or development of [the] information, and thus [do] not qualify for § 230 Immunity." *Ben Ezra*, 206 F.3d at 980, n.4.

*Elements of Unfair Trade Practice Claim*

Having determined that Defendants are not immunized from liability under the CDA, the Court now turns to heart of the FTC's complaint and the conduct of Defendants at issue in this case. In order to establish that Defendants engaged in an unfair business practice under the FTC Act, the FTC must establish 1) that the practice complained of causes or is likely to cause substantial injury to consumers; 2) which is not reasonably avoidable by the consumers themselves; and 3) is not outweighed by countervailing benefits to consumers or to competition. 15 U.S.C. § 45(n). Both parties have moved for summary judgment on Plaintiff's unfair business practice claim. The FTC argues that the undisputed material facts establish that Defendants' sale of confidential consumer phone records without the affected consumers' consent

constitutes an unfair business practice as a matter of law. Defendants argue that the FTC has not established the elements of an unfair business practice claim.

As an initial matter, Defendants argue that because there is no evidence that the Defendants themselves engaged in false or fraudulent tactics to obtain consumer phone records, the FTC is seeking to hold them vicariously liable for the acts of third parties over whom the Defendants have no control. Defendants further argue that their independent conduct does not rise to the level of an unfair business practice. In this regard, Defendants fundamentally misapprehend the nature of the FTC's complaint. The FTC's cause of action is based on unfairness, not deception, and the absence of proof that Defendants directly engaged in deception is completely irrelevant. The wrongdoing at the heart of the FTC's Complaint is that the Defendants obtained and sold consumers' confidential phone records, causing those consumers substantial harm. Each time the Defendants placed an order for phone records, they caused others to use false pretenses and other fraudulent means to obtain confidential consumer phone records . There was simply no other way for any vendor to obtain the phone records ordered by Defendants without engaging in such fraudulent acts. Thus, the "unfair business practice" relied upon by the FTC is Defendants' obtaining and selling of confidential consumer phone records where that practice was necessarily accomplished through illegal means.

Further, while the FTC need not prove knowledge or intent to prevail on its

unfairness claim, Defendants' claim of blissful ignorance is simply not plausible in light of the facts of this case. Defendants were and are in the business of information brokering and can reasonably be expected to know what information is legally available. Even if Defendants were unaware at the outset how these records were obtained, emails documenting the ordering process between AccuSearch and its vendors clearly indicated that underhanded means were used to obtain the records. For example, an email to AccuSearch from vendor/researcher Double Helix, attaching a PDF copy of the consumer's entire phone bill, stated, "He [the consumer] is aware that someone is looking at his bills. I went ahead and got all the rest of the available cycles on this because I may not be able to get back in. If you need others, let me know. Attached are these results." Pl. Ex. 19, Att. A at 26-29. The inescapable conclusion from such remarks is that the records are being obtained surreptitiously.[1]

Additionally, the FTC seeks to hold Defendants liable solely for their own conduct, not anyone else's. The plain language of the Complaint charges that

---

[1] *See also* Pl. Ex. 19, Att. A, various emails to AccuSearch from Double Helix explaining why phone record orders could not be fulfilled, *e.g.*, *id.* at 2: "It has 2 passwords and a flag on it and I can't get around them;" *id. at* 6: "I have an inside source with Cingular. Do you want me to see what I can get? . . . . I just always want to be careful not to upset someone with connections;" *id. at* 10: "I have tried everything I can to get around this password. I cannot break it. I have also had 3 other people work on it and they can't break it either. Sorry for the inconvenience." While Defendants rely on emails sent to and received from these same vendor/"researchers" in which they state that they only obtain search results lawfully, it defies logic to think that Mr. Patel only read emails relating to promises that vendors/"researchers" were conducting searches lawfully, and not emails suggesting the opposite was true.

Defendants' actions in obtaining and selling confidential phone records caused substantial injury and was unfair. That charge is supported by uncontradicted evidence of the Defendants' direct acts. It is for these acts and the resulting injury they caused for which the FTC seeks to hold Defendants liable.[2]

1. Defendants' Business Practice Caused Substantial Injury to Consumers

Defendants argue that the injury caused by the sale and distribution of confidential consumer phone records relates only to subjective emotional harm and is therefore not the type of "substantial injury" that will give rise to an unfair business practice claim. In support of this position, Defendants cite to the Commission's policy statement on unfairness which provides as follows:

> The Commission is not concerned with trivial or merely speculative harms. In most cases, a substantial injury involves monetary harm. . . . . Unwarranted health and safety risks may also support a finding of unfairness. Emotional impact and other more subjective types of harm, on the other hand, will not ordinarily make a practice unfair.

FTC Unfairness Policy Statement, Letter from the Federal Trade Commission to Hon. Wendell Ford and Hon. John Danforth, Senate Committee on Commerce, Science, and

---

[2]Defendants advertised the availability of phone records for sale, took orders from customers and were paid by those customers at a price set by Defendants. Defendants sent its customer order information to its vendors for fulfillment, for which it paid the price set by the vendor. Defendants received the phone records, handled customer service inquiries, paid refunds to customers, and sent the ordered requests to customers. Importantly, Defendants ignored indications from its customers and vendors that the consumers whose phone records were being ordered wanted to keep those records private.

Transportation (Dec. 17, 1980), appended to *In re: International Harvester*, 104 F.T.C. 949, 1070 (1984) (hereafter "Policy Statement"). Defendants also cite the Tenth Circuit case of *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1235 (10th Cir. 1999) in which the Court referred to possible harm caused by exposure of phone records and noted:

> Although we may feel uncomfortable knowing that our personal information is circulating in the world, we live in an open society where information may usually pass freely. A general level of discomfort from knowing that people can readily access information about us does not necessarily rise to the level of a substantial state interest . . . for it is not based on an identified harm."

*Id.* at 1235. In response, the FTC asserts that substantial injury to consumers resulted in the form of 1) unwarranted health and safety risks experienced by some consumers from stalkers and abusers; 2) economic harm associated with both the cost of changing telephone carriers and in lost time and productivity associated with addressing necessary upgrades to the security of their accounts; and 3) identifiable emotional impact harm that is neither trivial nor merely speculative. While the *U.S. West* case discussed, somewhat dismissively, the theoretical possibility of harm that can come from exposure of phone records, whether accidental or intentional, this Court is presented with evidence of *actual consumer harm* where third parties have gone to considerable expense and effort to gain access to those records.

The range of injuries experienced by the consumers whose phone records were sold fits squarely within the categories of harm contemplated by the FTC's policy. First,

the severe harm experienced by some consumers from stalkers and abusers who procured the consumers' phone records constitutes a clear and unwarranted risk to those consumers' health and safety. Additionally, the FTC has documented economic harm experienced by consumers whose phone records have been disclosed, including actual costs associated with changing telephone carriers and addressing necessary upgrades to the security of the accounts. *See Windward v. Marketing Ltd.*, 1997 WL 33642380, *11 (N.D. Ga. 1997) (noting that injury is "substantial" if it causes small harm to large class of people). Finally, while the substantial injury requirement may not *ordinarily* be met from emotional impact harm that is "trivial or merely speculative," the evidence presented to the Court regarding the sale of consumer phone records in particular demonstrates a host of emotional harms that are substantial and real and cannot fairly be classified as either trivial or speculative.

2. Injury Not Reasonably Avoidable by Consumers

Defendants do not seriously dispute that the injury resulting from sale of confidential phone records is not reasonably avoidable by consumers. In fact, the evidence presented before the Court indicates that confidential consumer phone records were sold through Abika.com despite considerable efforts by consumers to maintain the privacy of those records.

3. Injury Not Outweighed by Countervailing Benefits to Consumers/Competition

While Defendants attempt to offer generalized examples of the types of beneficial information sometimes provided by data brokers, they make no argument related to the specific conduct at issue here, i.e., obtaining and selling confidential consumer phone records without the consumer's consent. While there may be countervailing benefits to some of the information and services provided by "data brokers" such as Abika.com, there are no countervailing benefits to consumers or competition derived from the specific practice of illicitly obtaining and selling confidential consumer phone records.

*Availability of Injunctive Relief and Other Remedies Sought by the FTC*

With respect to injunctive relief, the Defendants argue that Abika.com ceased offering phone records searches in January of 2006, and that Defendants have no intention of reintroducing these services to their website. Further, because the recently enacted Telephone Records and Privacy Protection Act of 2006 criminalizes the sale, transfer, purchase and receipt of confidential phone record information, Defendants assert there is no longer a need to enjoin an activity that has now been made criminal. Accordingly, Defendants argue that injunctive relief is both unnecessary and inappropriate.

Section 13(b) of the Federal Trade Commission Act authorizes the FTC to seek,

and the district courts to grant, preliminary and permanent injunctions against practices that violate any of the laws enforced by the Commission. "The mere discontinuation of an unlawful practice prior to law enforcement action does not deprive a court of the power to grant injunctive relief." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). Further, the Commission need not show that the defendants are likely to engage in the *same precise conduct* found to be in violation of the law, but rather only that similar violations are likely to occur. *Id.* at 633-634 (authorizing injunctive relief aimed at similar conduct). Here, because Defendants continue to operate in the information brokerage business, the FTC persuasively argues that injunctive relief is still necessary to prevent defendant from engaging in similar unfair acts or practices. Additionally, the FTC points out that in connection with its prayer for injunctive relief, it also seeks other equitable relief (such as disgorgement of ill-gotten gains and requiring notice to all consumers whose phone records were distributed by Defendants). The claim for these types of equitable relief remain viable even if an injunction is otherwise unnecessary.

*Defendants' Affirmative Defense of Equitable Estoppel*

Defendants next argue that the FTC should be barred from bringing its claims by the doctrine of equitable estoppel. In support of this argument, Defendants claim that the FTC's public policy statements, public statements, and inaction with regard to phone

records led the Defendants to believe that their actions with respect to the sale of phone records were not illegal. Even if accepted as true, these allegations do not serve as a basis for granting summary judgment to the Defendants.

The Tenth Circuit has noted that "[c]ourts generally disfavor the application of the estoppel doctrine against the government and invoke it only when it does not frustrate the purpose of the statutes . . . or unduly undermine the enforcement of public laws." *FDIC v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994). In addition to the traditional elements of estoppel, in order to successfully assert estoppel against the government, the party asserting the defense must show "affirmative misconduct on the part of the government." *Id.* Erroneous advice by a government official is insufficient. *Id.* Recognizing that there has yet to be a case in which the government was estopped from acting to enforce a public right or vindicate the public interest, the Tenth Circuit has observed that "[i]t is far from clear that the Supreme Court would ever allow an estoppel defense against the government under any set of circumstances." *Id.*

The circumstances and facts of this case present no justification for applying the estoppel defense to the FTC. Defendants rely instead on an “everyone else is doing it” justification. The alleged inaction on the part of the FTC constitutes no more than the Commission’s exercise of discretion and judgment in the allocation of agency time and resources and will not form the basis of an equitable estoppel defense.

*FTC's Jurisdiction over the Conduct at Issue*

The Court has already stricken Defendants' jurisdictional defense, accordingly, Defendants' Motion for Summary Judgment based upon lack of jurisdiction is rendered moot.

## CONCLUSION

For the reasons set forth in more detail above, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendants' Motions for Summary Judgment are **DENIED**. The Court finds that Defendants' practice of selling consumer phone records constitutes an unfair business practice within the meaning of Section 5 of the FTC Act, 15 U.S.C. § 45(a). This matter will be set for an evidentiary hearing for the Court to determine what injunctive and equitable relief is appropriate.

**IT IS SO ORDERED.**

DATED this 28th day of September, 2007.

United States District Judge